## Estate of John F. Miller, deceased.  Appeal of William Dorris, Executor of John F. Miller, deceased.

*Decedents' estates—Collateral inheritance tax—Penalty—Delay from litigation.*

An executor will not be charged the penalty of twelve per cent upon the collateral inheritance tax, where it appears that he was compelled to engage in extensive and protracted litigation in another state to recover a large portion of the estate; that the litigation as to part of the estate was not ended at the time of the adjudication; and that the question whether the portion of the estate situated out of the commonwealth was liable for the collateral tax was not determined until the final decree of the orphans' court.

*Collateral inheritance tax—Legacies—Property outside the state.*

Where real estate or securities, situated outside of the state, are directed by will to be sold or converted into money to pay pecuniary legacies, the legacies pass to the legatees as money, subject to collateral inheritance tax.

Argued April 20, 1897.   Appeal, No. 578, Jan. T., 1896, by William Dorris, executor, from decree of O. C. Huntingdon Co., on citation to executor to pay collateral tax.   Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ.   Decree modified and affirmed.

Citation to executor to pay collateral inheritance tax.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree against executor.

*John D. Dorris* and *A. O. Furst*, for appellant.—The tax does not attach to the very articles of property of which the deceased died possessed.   It is imposed only on what remains for distribution after expenses of administration, debts and rightful claims of third parties are paid or provided for: Orcutt's App., 97 Pa. 179; Howell's Est., 147 Pa. 164.

Tax laws are construed most strongly against the government and most favorably to the taxpayer: Del Busto's Est., 23 W. N. C. 111; Commonwealth's App., 128 Pa. 612; Com. v. Smith, 5 Pa. 142; In re Alexander's Est., 3 Clarke, 87.

The personal property in Iowa is not subject to tax in Pennsylvania, and is subject to domestic taxation in the state of Iowa.

If the property is not liable to the tax at the owner's death, wherever it is, bringing it into this state will not make it so: Boger on Col. Inh. Tax, 25; Catlin v. Hull, 21 Vt. 152; People v. Gardner, 51 Barbour, 352; People v. Commissioners of Taxes, 23 N. Y. 224; Supervisors v. Davenport, 40 Ill. 197; Hunter v. Supervisors, 33 Iowa, 376; Redmond v. Commissioners, 87 N. C. 122; Finch v. York County, 19 Neb. 50; Wilcox v. Ellis, 14 Kansas, 588.

*J. F. Schock*, for appellee.—An appraisement for collateral inheritance tax purposes under sec. 12 of the act of April 10, 1849, or of the 2d sec. of the act of March 11, 1850, is final and conclusive, unless appealed from within thirty days: Com. v. Freedley's Exrs., 21 Pa. 33; Pepper & Lewis' Dig. 4493; Act of May 6, 1887; Stinger v. Com., 26 Pa. 422.

Personal property, in consideration of law, has no fixed locality, but follows the person of its owner, and is subject to the law of his domicil, and may be taxed by the government under which he resides: Hood's Est., 21 Pa. 106; Bittinger's Est., 129 Pa. 345; Short's Est., 16 Pa. 63; Miller's Est., 3 Rawle, 319; Tyson's App., 10 Pa. 220; Com. v. Coleman, 52 Pa. 468; Drayton's App., 61 Pa. 172; Williamson's Est., 153 Pa. 508; Miller v. Com., 111 Pa. 328.

That the law does not require the commonwealth to wait for the tax on legacies until the final account of the executor has been adjudicated is made clear by sec. 11 of the Act of May 6, 1887, P. L. 82.

The payment of the tax covered by the decree was not delayed one moment since March 16, 1895, by litigation pending in Iowa. The refusal, without cause, of the executor to pay the tax is the only reason that can be assigned for its nonpayment.

OPINION BY MR. JUSTICE DEAN, July 15, 1897:

John F. Miller, of Huntingdon, on August 24, 1893, died unmarried, without issue. He left an estate of about $70,000, nearly all of it personalty. He left a will, in which he made specific bequests to a number of collateral relatives, amounting in the aggregate to $42,000; the residue of the estate he be-

queathed to his niece, Margaret A. Taylor, subject to the payment of the collateral inheritance tax. He appointed appellant executor of this will, and letters testamentary were issued to him in Huntingdon county on September 9, 1893. The executor filed an inventory, showing about $24,000 in his hands. At the date of testator's death, the situs of a considerable part of the estate was in Iowa. A nephew of his and a legatee, one W. W. Miller, who resided in Iowa, and who, during the lifetime of his uncle, actively managed that part of the estate, procured letters of administration thereon in Iowa; he filed an inventory of that part in Black Hawk county, Iowa, showing about $36,000 in his hands. Dorris, the executor of the domicil, had the will also proved in Iowa, and instituted proceedings in the proper court of that state to have the appointment of W. W. Miller vacated, and letters ancillary issued to him. W. W. Miller also made large claims on the estate of his uncle as a creditor. There resulted long and doubtful litigation; the final event was a decree by the Supreme Court of Iowa in favor of the Pennsylvania executor, on March 16, 1895. Letters testamentary in Iowa were directed to issue to him, and the nephew was directed to pay over to him about $33,000, of money in his hands; in addition, Mr. Dorris collected from him a note of $5,000 given to his uncle; he also filed a bill in equity against the nephew to enforce the collection of an additional amount of $10,000, alleged to be due from the nephew to the uncle. This last proceeding is still pending in the Supreme Court of Iowa on appeals by both parties.

Within one year after testator's death the executor paid to the register of Huntingdon county, $670, collateral inheritance tax, computing it on the amount in his hands, less $4,000, which he reserved for expenses and possible contingencies. On May 23, 1896, the register of Huntingdon county petitioned the court for a citation to the executor to appear and show cause why decree should not be made against him to pay the collateral inheritance tax on the whole appraised estate, the amount of said tax being computed at $2,434.45, with interest thereon at twelve per cent from August 25, 1894. To this the executor made answer, setting out fully the facts of prolonged litigation, the amounts he had received, and the dates; also that a large sum as taxes had been collected in Iowa, and he is advised that the part of

the estate located there is not subject to collateral inheritance tax in Pennsylvania.

On full hearing, the court below decided that portion of the estate in Iowa was subject to the Pennsylvania tax, and all the estate except a small portion of real estate outside of this state. The learned judge of the court below thus states a computation of the tax and his reasons therefor:

"This tax was payable on August 24, 1894. The executor paid $670 of it on the 23d of August, and he is entitled to credit for that amount. The balance of the tax remains unpaid, and the act of assembly fixes the rate of interest on it at 12 per cent per annum, except where, from litigation or other unavoidable cause of delay, a portion of the estate cannot be settled, only 6 per cent per annum is chargeable on such unsettled portion until default. On account of litigation in the state of Iowa the sum of $27,997.57 did not come into the hands of the executor until March 16, 1895. He would not be in default in the payment of the tax on that part of the estate until after that time, and would be liable for interest on it only at the rate of 6 per cent from the end of the year until he received it.

"Applying the foregoing method of computation, we find that there is due and unpaid collateral inheritance tax the sum of $1,788.92 ascertained as follows:

| | | |
|---|---:|---:|
| 5 per cent on $178.50, value of furniture, &c. | $ | 8.92 |
| 5 per cent on $42,000, legacies paid, . . | | 2,100.00 |
| 5 per cent on $2,000 note of John H. Miller, | | 100.00 |
| 5 per cent on $5,000, paid to residuary legatee, | | 250.00 |
| | | $2,458.92 |
| Deduct amount paid Aug. 23, 1894, . . | | 670.00 |
| | | $1,788.92 |
| Interest from Aug. 24, 1894, to March 16, 1895, at 6 per cent, . . . . | $ 35.65 | |
| Interest on same from March 16, 1895, to this date, Nov. 16, 1896, at 12 per cent, . . . . . | 207.46 | |
| Interest on balance, $730, from Aug. 24, 1894, to this date, Nov. 16, 1896, at 12 per cent, .˙ . | 195.15 | 438.26 |
| | | $2,227.18 |

We think this computation is not warranted by the law and the undisputed facts. Section 4, of act of May 6, 1887, enacts that, "Where, from claims made upon the estate, litigation or other unavoidable cause of delay, the estate of any decedent or part thereof cannot be settled up at the end of the year from his or her decease, six per cent per annum shall be charged upon the collateral inheritance tax arising from the unsettled part thereof, from the end of such year until there be default."

Obviously, from this act, it was not the intention of a great commonwealth, where a faithful representative of an estate has striven both in her interests and those of the estate to perform his official duty, to harass him with vexatious litigation and the imposition of punitive charges, because of delay that was unavoidable.

It will be noticed, that, under the will, the whole of the collateral inheritance tax is to be paid out of the residuary estate devised and bequeathed to Mrs. Taylor; there is to be no abatement of specific legacies to the amount of the tax. The executor, however, voluntarily, at his own risk, paid the tax within one year on the amount received by him in Huntingdon county, less $4,000 reserved for expenses and contingencies. The law just quoted, then, had no further demands on him while the Iowa litigation was pending; for it is not disputed that the commencement and prosecution of that litigation was an unavoidable, though probably a very irksome duty. He prosecuted it, not only in the interest of the estate, but in the interest of the commonwealth, for had he not done so, and permitted one half the estate to go into the hands of a foreign administrator, the commonwealth would probably have lost at least one half the tax now claimed. That part of the estate was not settled, by reason of unavoidable litigation. On March 16, 1895, the executor received from that source $33,888.62, and on April 20, following, $5,000. But, when was the estate settled, so as to determine approximately the amount subject to the tax? Litigation as to $10,000 is still pending; that claim, however, is not against the estate, but is made in its favor. There can be no more unfavorable result to the estate than a failure to recover the amount, and consequent payment of costs; the residuary estate will be to that extent depleted, but that does not

warrant a decision that there is no settlement, because of a single outstanding uncollected claim in favor of the estate. Another question is raised by the answer, viz: that it is doubtful whether a large part of the estate in Iowa is subject to the collateral inheritance tax, having been invested in the name of W. W. Miller, the nephew, and so standing at the death of testator. But, as the learned judge of the court below clearly shows, under the authorities, Miller v. Com., 111 Pa. 321; Coleman's Estate, 159 Pa. 231, and Williamson's Estate, 153 Pa. 508, this money is taxable under the law of the domicil. However, that question was not settled at the end of the year, nor was it settled until the court below settled it. That decree protects the executor now in payment to the commonwealth, but until that decree, the estate, as to that question, was not settled, and the imposition of any penalty is unwarranted. Therefore, we are of opinion that the penalty of 12 per cent should not be computed on any portion of the tax.

The executor avers in his answer that it is doubtful if $7,000 will cover the expenses of final settlement. In view of the protracted and expensive litigation carried on in a distant state, we think this not an unreasonable sum to reserve for such contingency. We therefore affirm the decree of the court below, with this modification: That from the whole amount received by the executor, both in Pennsylvania and Iowa, there be deducted the sum of $7,000, to be retained by him for contingent expenses which may be incurred in the final settlement of the estate, and that interest at 6 per cent be computed on 5 per cent of balance from one year after the death of testator until the date of this decree. Thus:

| | |
|---|---:|
| Furniture, . . . . . . | $    178.50 |
| Legacies paid, . . . . . . | 42,000.00 |
| Note of John H. Miller, . . . . | 2,000.00 |
| Residuary legatee, . . . . . | 5,000.00 |
| | $49,178.50 |
| Deduct . . . . . . . | 7,000.00 |
| | $42,178.50 |

| | |
|---|---|
| Five per cent . . . . . . | $2,108.92 |
| Deduct tax paid, . . . . . . | 670.00 |
| | $1,438.92 |
| Interest on same at 6 per cent from August 24, | |
| 1894 to July 15, 1897, . . . . | $ 249.65 |
| | $1,688.57 |

This amount, the executor is directed to pay over to the register of wills of the county of Huntingdon, and as thus modified, the decree is affirmed.