CHAIA GLIKKA ISARAELEVNA KESSLER ET AL., Petitioners and Appellants-Appellees, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Respondent and Appellee-Appellant.

No. 6608.   Argued May 24, 1935.—Decided December 16, 1935.

190

*M. Acosta Velarde* and *F. Acosta Velarde* for appellants-appellees.
*Benjamin J. Horton, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for appellee-appellant.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Chaia Glikka Isaraelevna Kessler and twelve other persons, all residing abroad, as testamentary heirs of Esther Bessie Boerman, took an appeal to the District Court of San Juan from the appraisal of the estate of Mrs. Boerman and from the assessment of taxes thereon made by the Treasurer of Puerto Rico, and prayed for the recovery of the sum of $684.26 which they paid on May 19, 1932, together with costs, interest, and attorney's fees.

In their petition they alleged, in short, the following facts:

Their ancestor Mrs. Boerman, in turn an heir of her son who died in this island on January 30, 1915, died leaving a will in Tomsk, Russia, on March 10, 1920, when the inheritance of her son was still under administration.

On October 29, 1920, the District Court of Ponce approved the partition and allotment of the estate of Charles M. Boerman. The property allotted to the petitioners' ancestor was left in the possession of the judicial administrator. On September 24, 1930, the district court entered an order supplemented by another of March 16, 1932, declaring the petitioners to be the heirs of Mrs. Boerman with a right to take possession of the property allotted to her.

Late in April 1932, the Treasurer of Puerto Rico was notified of the death of Mrs. Boerman and was furnished with a description of the estate inherited by the petitioners, which consisted of some properties situated in Utuado, Río Piedras, Ponce, and San Juan, valued at $25,386.77, including

an undivided interest in the naked ownership of a certain house appraised at $11,441.20.

The Treasurer erroneously, arbitrarily, and illegally fixed the value of said properties at $33,965.85, using as a basis therefor the appraisal for taxation purposes for the fiscal year 1931-32 instead of that for the year in which Mrs. Boerman died. He failed to allow to the petitioners the $5,000 exemption to which each of them was entitled in accordance with the law, and he included the value of the above-mentioned undivided interest in the naked ownership of a certain house, thus assessing the tax at $322.25, and charging besides the sum of $361.41 as interest from March 10, 1921. Had the Treasurer acted correctly, the petitioners would not have had to pay anything, and even assuming his assessment to be correct the charge for interest would not be proper in any case.

The Treasurer demurred to the petition, and his demurrer was overruled. He then answered. He admitted the fact that petitioners were the heirs of Mrs. Boerman and likewise all the allegations made with reference to the inheritance, but he maintained that his appraisal and assessment were correct. As special defenses he set up that the court lacked jurisdiction to review the appraisal of an assessment of taxes on properties situated outside the court's district and, further, that it lacked jurisdiction to order within this proceeding, the refund of the interest or of any other sum paid by the petitioners as an inheritance tax.

Subsequently the parties stipulated the following facts:

That the actual value of the inherited properties, in accordance with the official appraisals for the respective years, was $25,386.77 on March 10, 1920, and $33,965.85 in the years 1930-31 and 1931-32; that the petitioners were denied an exemption of $5,000 and granted one of $200; and that the petitioners were the holders of an undivided interest of 77.4877 per cent of the naked ownership of the house situated on Salvador Brau Street, in San Juan, Puerto Rico,

"it being understood that they legally hold said undivided interest because they have the title thereto, as the actual possession of said property is enjoyed by the usufructuary, Mrs. Charles M. Boerman."

The introduction of evidence was dispensed with. The district court based on the pleadings and on the stipulation filed, rendered judgment as follows:

". . . it is ordered that the inheritance tax be computed by the Treasurer of Puerto Rico: (a) on the basis of the official appraisal of the property in 1920; (b) excluding the official valuation in 1920 of the undivided interest in the naked ownership of the house situated on Salvador Brau Street in this city; (c) granting no exemption; (d) charging interest on the inheritance from March 10, 1921, to May 19, 1932, at the rate prescribed by law. The difference between the amount paid by the petitioners on May 19, 1932, or $684.26, and what they really should have paid in accordance with this opinion, shall be refunded to the petitioners, with legal interest on the latter amount from May 19, 1932, to the date of payment, without special imposition of costs."

Both parties appealed.

The petitioners maintain that the trial court erred in not allowing to them the $5,000 exemption and in holding that they were bound to pay interest after the lapse of one year from the death of their ancestor.

The respondent assigns seven errors which, as he claims, were committed by the district court in holding (1) that there was no misjoinder of causes of action; (2) that the complaint was not ambiguous, unintelligible, or uncertain; (3) in reviewing the appraisal of such assessment of taxes on properties situated outside the court's district; (4) in declaring that the valuation to be considered should be the one given to the properties on the date of the death of the testatrix; (5) in deciding that it was not proper to take into account the value of the naked ownership; (6) in adjudging the respondent to pay legal interest; and (7) in sustaining the complaint and in ordering the respondent to reassess the tax.

■ Before anything else we will take up the first two errors assigned by the respondent and appellant, to wit: the misjoinder of causes of action and the ambiguity of the complaint.

Both these questions were raised before the district court by demurrer. It is urged that "the action of appeal to review the appraisal of an estate or inheritance and the assessment of taxes thereon and the action for recovery of interest" herein exercised can not be joined because they are not comprised in any of the eight subdivisions of section 104 of the Code of Civil Procedure (1932 ed.); and that the complaint is ambiguous, because even assuming that the causes of action could be joined they were not separately stated, and because the allegations and the prayer are inconsistent in that the former referred to the appraisal and assessment, whereas in the latter the refund of the amount paid for taxes and interest is claimed.

In commenting on the nature of this proceeding, in *Succession of Puente* v. *People et al.*, 19 P.R.R. 532, 536–539, we said:

"The provisions of the Political Code on inheritance taxes are complete and specific. In brief, they provide * * *.

"We have made the foregoing reference to the Revenue Law in order to call special attention to the fact that in deciding to impose inheritance taxes the Porto Rican legislators adopted a complete and specific system which is distinct in many particulars from that adopted for the imposition and collection of other taxes.

"For example, an appeal from assessments made by officers of the Government in cases of taxes on property in general lies to the Board of Review and Equalization whose decision will be final, whereas in cases of the appraisal of an estate of inheritance and the assessment of taxes thereon the appeal lies, not to the Board of Review and Equalization, but to the proper district court.

"In like manner the method established by the law for the collection of taxes on property in general is different from that for the collection of inheritance taxes. When property taxes are not paid within the time prescribed by law the Government levies

upon and sells the property and collects the amount due. When inheritance taxes are not paid within the time fixed by the law the district *fiscal* is required to institute the necessary legal proceedings for their recovery upon the receipt of due notice from the Treasurer.

"Such was the law in Porto Rico on these subjects when said Act No. 35 was passed in 1911. In the first section thereof it is provided that * * *.

"As will be seen from the foregoing summary of said Act No. 35, none of its provisions expressly repeals section 374 of the Political Code, which, as we have seen, is included in the provisions of the code relating to inheritance taxes and which, copied literally, reads:

" 'Section 374.—Within thirty days of the completion of said appraisal and assessment of taxes, any person or beneficiary affected thereby shall have the right to appeal therefrom to the district court of the district within which the estate is located on paying, or giving security to pay, all costs, together with whatever tax may have been assessed, upon the devise, bequest, legacy, grant or inheritance; and the said district court shall proceed to determine the matter as speedily as possible.'

" *     *     *     *     *     *     *

"If we review section 374 carefully, we will see that it provides for an appeal to a court of justice from the appraisal of property of inheritance and the assessment of taxes thereon.· And if we consider in like manner Act No. 35 we will see that it provides for the payment of taxes under protest when any proceedings are taken for the collection thereof, and for subsequent proceedings before a court of justice to test the legality of the collection.

"The purpose of the two statutes are distinct and we are of the opinion that Act No. 35 of 1911 does not repeal by implication section 374 of the Political Code. Both statutes can and should be effective in all their parts. The decisions cited in the case of *The People* v. *Axtmayer, ante,* p. —— and the theory on which the decision therein was fundamentally based are invoked and applied to the decision of this case.

"In order to exercise the right of appeal under section 374 of the Political Code a prior payment of the taxes assessed is not required. An appeal lies to the district court within 30 days from the conclusion of the appraisal and assessment of taxes either on paying or giving security for the payment thereof, and the said

appraisal and assessment will be changed and modified if the merits of the case be shown by the interested party to warrant the same.

"To exercise the right of appeal under Act No. 35 the proper official must have taken the preliminary steps for the collection of the taxes, the taxes must have been paid under protest, and the appeal must be taken on the ground that the collection of the taxes so paid under protest is unjust and illegal or made in violation of some statutory provision."

In 1925, there was enacted by the Legislature Act No. 99 to modify and extend the inheritance tax, and for other purposes. Section 7 of said act is identical with section 374 of the Political Code which was construed in the case of *Succession of Puente* v. *People et al., supra,* and the act has no other provision changing said construction.

It is not the case, therefore, of an ordinary complaint whereby an action was commenced, but of an appeal taken from a decision of an administrative official to a court of justice.

The decision appealed from embraces several matters: the appraisal of the estate, the assessment of the taxes to be paid by the heirs, and the interest charged in accordance with the express provisions of the law. It constitutes a unit and the appeal is taken from it as a whole. The recovery of the whole or a part of the amount paid, or the cancellation of the security furnished for the purpose of the appeal, would be the logical consequence of a judgment in favor of the appellant.

The petition, designated as "complaint" in this case, whereby the appeal was taken, in our opinion conforms to the special law on the subject, and contains no misjoinder nor is it ambiguous, unintelligible, or uncertain. It transferred to the jurisdiction of the district court the entire matter passed upon by the Treasurer in the exercise of his jurisdiction in order that the court might determine as speedily as possible whether the decision of the Treasurer was in conformity with the facts and the law, and might

make all other pronouncements necessary to render effective its own jurisdiction.

■ Therefore, the first two errors are nonexistent. The first assignment raises a jurisdictional question. The law specifically grants the right to appeal "to the district court within which the estate is located."

In this case the properties constituting the estate are situated in the judicial districts of Arecibo, Ponce, and San Juan, where the respondent has his domicile and where the greatest part of the estate is located.

If the construction favored by the respondent were correct, a case might arise where eight distinct appeals would have to be taken before eight district courts of the island from a single decision of the Treasurer. Such a construction would be contrary to the evident purpose of the act, namely, rapidity and justice in the assessment and collection of the tax. All district courts of Puerto Rico have the same jurisdiction, and the logical construction seems to be that in a case of this kind where there are properties situated in several districts, any district court to which resort may be had should be empowered to pass upon the matter in its entirety. This is the construction that we adopt. The error is nonexistent.

■ In his argument under the fourth assignment, the Treasurer maintains that his contention before the district court was that said district court was not placed in a position to decide whether or not the true value of the properties was the one fixed by him, since the stipulation only proves that the actual value of the properties *according to the official appraisal of the same* was, at the time of the death of the testatrix, in 1920, $25,386.77, and at the time of the appraisal, in 1932, $33,965.85, and it is a well-known fact that the appraisal is not conclusive proof of the value.

The applicable rule has been well settled by the jurisprudence, which is summarized in Corpus Juris as follows:

"While the valuation placed on the property in question by assessors for purposes of property taxation may be considered, it is not binding; it is not the standard of value prescribed by statute for inheritance taxation, and is not to be substituted therefor." 61 C. J. 1692.

If the fact did not clearly appear, as it does, from the stipulation, that the basis adopted by the Treasurer for the valuation of the estate was the official appraisal of the same ten years after the death of the decedent, the Treasurer would be right.

But as such a fact appears and as there is no question that the property is to be valued as of the date of the death of the decedent (61 C.J. 1692, par. 2554), it must be concluded that the appraisal was not properly made.

The difficulty for a final decision of this case is that the appellants confine themselves to the introduction of the official appraisal made at the time of the death of the decedent, as the sole evidence regarding the value of the property; evidence which we have just decided is not conclusive. This being so, it is necessary to remand the case to the Treasurer in order that the appraisal be made as of the date of the death of testatrix in accordance with the law.

█ This disposes of the fourth assignment of error. The fifth assignment relates to the valuation of the undivided interest in the naked ownership. We know the decision of the court, to the effect that the value of such condominium should not be taken into account as it was exempt from taxation in accordance with the law in force at the time of the death of the decedent, that is, the act of 1916.

The Treasurer, in his brief, says that he never asserted that the applicable statute was the act of 1925, that what he maintained and still maintains is that, in accordance with the act of 1916, the undivided interest in the naked ownership is subject to taxation.

Section 368 of the Political Code, as amended by Act No. 62 of 1916 (Session Laws, p. 125), which is the applicable provision, reads as follows:

"All real property within Porto Rico and any interest therein, whether belonging to inhabitants of Porto Rico or not, and all personal property belonging to inhabitants of Porto Rico which shall pass by will, by intestacy, by inheritance or by any grant whatsoever, made or intended to take effect in possession or enjoyment after the death of the grantor to any person, association, institution or corporation, in trust or otherwise, shall be subject to a tax as hereinafter provided;  *  *  *."

Therefore, all real property and any interest therein the "*posesión* o *usufructo*" of which passed to the heirs was subject to the payment of the inheritance tax at the time of the death of the testatrix herein.  The English text of the statute uses the words "possession or enjoyment."

Does possession pass to the heirs when only naked ownership is inherited?

The word "property" is applicable in general to anything of which riches or fortune may consist.  Ownership is the right by which a thing belongs to someone in particular, to the exclusion of all other persons.  It confers on the owner the right to enjoy and dispose of a thing without further limitations than those established by law, and to recover the same by action.  Ownership may be perfect *(plena)* or imperfect *(menos plena)* as in the case of the naked ownership where the usufruct is separated.

Usufruct is the right to enjoy another's property and to receive all the products, utilities, and advantages produced thereby, under the obligation of preserving its form and substance, unless the title creating it or the law provide otherwise.

Had the statute we are now construing used the word "ownership" instead of "possession," the question would be clearer.  But even using the word possession as it did, we think that the appellant Treasurer is right.

The definition of "possession" has given rise to the expression of conflicting views and long and confused commentaries. The lawmaker himself gives no general definition. In Book Second, Title V, of the Civil Code, "Possession" is dealt with, and it is said in section 360 that natural possession is the holding of a thing or the enjoyment of a right by any person, and that civil possession is such holding or enjoyment, coupled with the intention on the part of the possessor of claiming the thing or right as his own.

Thus a definition by division is attempted, and immediately it is provided in sections 361 and 362 that possession of things or rights may be exercised, either by the same person who holds and enjoys them or by another in his behalf; and that the possession of things or rights may be held either by the owner of such things or rights, or by one acting as a custodian for the purpose of keeping or enjoying them while the ownership belongs to another.

Thus the owner and the usufructuary are both possessors, and in our opinion the tax should be levied on both of them, and their respective possessory rights valued in accordance with the extent of the usufruct.

What the lawmaker had in mind was not the payment of a double tax, but that the tax should be paid according to the just value of the immovable transferred. That value is only one for the People. It is not so for the owners of the naked ownership and of the usufruct. The aggregate value of their rights constitutes a total value of the immovable, and hence the value of each of those rights must be appraised separately. Thus, for instance, on a scale of one hundred, according to the extent of the usufruct, the value of the naked ownership may be twenty, fifty, or seventy per cent.

This being so, and the appellant heirs themselves having assigned in their return a value of $11,000 to the undivided share in the naked ownership in question, it would seem that we should also agree with the appellant Treasurer and decide that said value is the one which should be considered for

the assessment of the tax; but as the appellants urge that said value refers to the value of the full and entire ownership and not to that of the naked ownership, which seems to be true, and as the case must necessarily be remanded to the Treasurer, the question must be left open in order that the Treasurer, in making a reassessment, should appraise the undivided share in the naked ownership passing to the heirs in this case in accordance with the principles on the subject which we have already stated.

The sixth error assigned was committed. The heirs themselves admit it in their brief. The law gives the right to appeal but imposes no obligation to pay interest. The tax was not paid under protest and the heirs could appeal by merely giving security for the payment thereof without making any actual payment.

It is not necessary to consider or decide the seventh and last assignment of error. It is a mere summary of the preceding assignments.

■■ Let us see now whether the heirs are right in maintaining that the trial court erred in holding that they were not entitled to the $5,000 exemption and that they were bound to pay interest on the tax after the lapse of one year from the death of their ancestor.

The applicable statute, section 368 of the Political Code already cited in part, as amended by Act No. 62 of 1916, in its pertinent part reads as follows:

". . . . . *Provided,* That no tax shall be collected upon the property passing to any one heir, legatee, devisee or grantee, other than to or for the use of a wife, child, grandchild, or person legally recognized as an adopted child of a male decedent, when the same shall be valued at two hundred dollars or less; *And provided, further,* That when the value of such property exceeds two hundred dollars the said two hundred dollars shall be deducted in estimating the taxes thereon; and the remainder after making such deductions shall be considered as the value of the devise, bequest, legacy, grant or inheritance; *And provided, further,* That no tax shall be collected upon the property passing to a wife, child, grandchild, or person

legally recognized as an adopted child of a male decedent, when the same shall be valued at five thousand dollars or less; *And provided, further,* That when the value of such property passing to a wife, child, grandchild, or person legally recognized as an adopted child exceeds five thousand dollars the said five thousand dollars shall be deducted in ascertaining the tax thereon; and the remainder after making such deductions shall be considered as the value of the devise; bequest, legacy, grant or inheritance.''

The trial court held that the words ''male decedent,'' used in the statute, show the intention of the lawmaker to limit the exemption to those cases in which the ancestor is a male, and the heirs claim that if such a construction were accepted, it would render the law unconstitutional and even absurd.

The term ''male'' used in the amendment of 1916 has such a clear meaning that it is not possible to include in it the word ''woman'' which would have to be done in order to extend the exemption to decedents of both sexes.

Was the lawmaker empowered to limit the exemption in such. a manner? In our judgment, he was.

Apart from the fact that it has been held that constitutional restrictions as to exemptions with regard to property taxes do not apply to inheritance taxes (61 C.J. 1614) we find nothing contrary to morals or public policy in the exemption provided. The legislature could consider as just the exemption in the case of the male, whose death eliminates the head of the family whom he supported not only with the proceeds of his estate but also with his work, and not consider the same necessary in the case of a woman whose contribution to the support of the family, as regards income from property generally is not equal to that of a man.

As Attorney General Harlan said in an opinion delivered on July 18, 1901, regarding sections 94 and 95 of the Revenue Act, ''it is clear that in these two sections a distinction is made by the legislature between the death of a husband and the death of a wife. Upon the death of the former, who in

common experience is the one that provides maintenance for his family, the legislature requires no tax from the estate that passes to his family, apparently upon the principle that the loss of his support by the family is a sufficient reason for the exemption of the family from the burden of taxation. On the other hand, in section 95 the apparent purpose of the legislature was upon the death of a wife to tax the estate passing to the husband and her lineal descendants on the theory that the husband, the source of family maintenance, is still able to support his family, and that the state may justly participate in the inheritance by levying a tax upon it." Vol. 1, Opinions of the Attorney General of Porto Rico, pages 35–36.

In the case of *In re Clark's Will*, 196 N.W. 839, the Supreme Court of Wisconsin, in passing upon the constitutionality of a statute similar to the one now under consideration, said:

. "The first attack made upon this provision is that it is unconstitutional, as being class legislation and a denial of the equal protection of the laws. The argument is that children inheriting from the father through the mother are accorded a credit denied to children inheriting from the mother through the father. It is said that there is no reasonable basis for this discrimination. We think otherwise. The widow is a favorite in the law, and the provision was, no doubt, for the purpose of encouraging the husband to make liberal provision for the widow and to remove the penalty of an additional inheritance tax in case she saw fit to pass the estate to their children. This is no more discriminatory than the $25,000 exemption accorded to the widow, but denied to the husband. We think the classification is based upon germane considerations and is immune from the charge that it works a denial of the equal protection of the laws."

The Supreme Court of the United States, in *Campbell* v. *California*, 200 U.S. 87, established the following doctrine:

"The Fourteenth Amendment does not deprive a State of the power to regulate and burden the right to inherit, but at the most can only be held to restrain such an exercise of power as would exclude the conception of judgment and discretion and would be so

obviously arbitrary and unreasonable as to be beyond the pale of governmental authority; and the statutes of California, therefore, are not unconstitutional because near relatives by affinity are preferred to collateral relatives.''

■ There was no error. Nor did the district court err in holding that the heirs were bound to pay interest after the lapse of one year from the death of their ancestor.

The applicable law—section 376 of the Political Code—provides:

''Sec. 376. All taxes imposed under Chapter III of this Title shall be paid into the Treasury of Porto Rico by the administrators, executors, trustees or other persons administering upon the estate charged with said taxes; and all such administrators, executors, trustees or persons shall be liable for such taxes, with interest as hereinafter provided, until the same shall have been paid. Such taxes shall become due and payable immediately upon the death of the decedent, and shall at once, become a lien upon the estate of the decedent and shall remain a lien until paid. If said taxes are not paid within ten days from the presentation of the tax bill, the Treasurer shall require the said executor, administrator, or trustee, bond in twice the amount of said taxes due and unpaid conditioned upon the full and complete payment of said taxes in the manner and within the term herein provided, and the Treasurer is authorized to attach the property of said decedent subject to the tax until such bond shall have been given. If said taxes are not paid within one year of the death of the decedent, interest at the rate of ten per centum shall be charged and collected thereon, and if said taxes are not paid at the expiration of eighteen months after the death of said decedent, it shall be duty of the district attorney of the district wherein said taxes remain unpaid to institute the necessary proceedings to collect the same, after being duly notified by the Treasurer of the nonpayment of such taxes.''

The heirs maintain that even if the $5,000 exemption which they claim for each of them is not allowed, they are not bound to pay interest, because if there was any delay it was not due to their fault but to the fact that they were unable to prove their status as such heirs until 1932, within the judicial administration proceedings, and because the law

only binds the administrators, executors, or trustees to the payment of interest.

The law is definite. It admits no excuse. It says that if the tax is not paid within one year of the death of the decedent, interest shall be charged. From that date on interest is due and there is no need to look into the reason for its nonpayment.

Summarizing the decisions on the subject, Corpus Juris says:

"In the absence of statutory authority, the court has no power to remit interest charges prescribed for delayed payment of the tax, and where the statute does not specify such matters as excuses for delay, interest will be charged on delayed tax payments although the delay arose from failure to administer the estate, litigation, or pendency of an appeal from the tax, and it is immaterial that part of the estate was given in remainder, or that the dispositions of the will were modified by agreement." 61 C. J. 1731.

In the case of *People* v. *Rice*, 91 P. 33, 35, the Supreme Court of Colorado, speaking through Mr. Justice Steele, said:

"Counsel also contend that the interest imposed is a penalty, and the statute must therefore be strictly construed in favor of the party sought to be penalized. Also that the penalty cannot be enforced, because there was never an opportunity to pay the tax and thus avoid the penalty. Whether we construe the statute strictly or liberally, we reach the same result. The act, in plain and unambiguous terms, says the tax 'shall be due and payable at the death of the decedent, and interest at the rate of 6 per cent. per annum for such time as said taxes are not paid shall be charged and collected.' The Legislature knew that under our laws no estate where an inheritance tax is chargeable could be settled within one year from the death of the intestate or testator; and, if the courts are to be in any wise controlled by the intention of the Legislature as expressed by the laws of the state considered together, they are bound to say that the Legislature intended to not exempt beneficiaries from the operation of this law because of pending litigation. It is not claimed that the language of this act is ambiguous or uncertain, but it is claimed that the charge of interest therein is a penalty imposed, and that under the circumstances disclosed by the record it is inequitable, unjust, and unlawful for the state to collect the interest.

"Such matters are considered by the statutes of New York and Pennsylvania as entitling the beneficiaries of an estate to be relieved from paying interest. Section 4, c. 713, p. 922, of the laws of New York (session of 1887), provides: 'All taxes imposed by this act, unless otherwise herein provided for, shall be due and payable at the death of the decedent, and if the same are paid within eighteen months, no interest shall be charged and collected thereon, but if not so paid, interest at the rate of 10 per cent. per annum shall be charged and collected from the time said tax accrued.' Section 5 of the same chapter of the New York laws provides that the penalty of 10 per cent. shall not be charged where, in cases of necessary litigation or other unavoidable cause of delay, the estate cannot be settled at the end of eighteen months from the date of the decedent's death, and in such cases only 6 per cent. shall be charged upon said tax, from the expiration of eighteen months. . . . . In the case *In re Moore*, 90 Hun, 169, 35 N. Y. Supp., 783, these statutes are construed, and the court there held that, as it appeared that there had been unavoidable delay in the settlement of the estate, no penalty should be imposed for the delay, but that interest at the rate of 6 per cent. from the expiration of 18 months should be paid. The estate mentioned in the case cited in 90 Hun was involved in litigation for many years, yet the court required interest to be paid as part of the tax, as required by statute. A very similar case arose in Pennsylvania, where the statutes are substantially the same as those of New York. The statute was construed in the case *Miller Estate*, 182 Pa. 157, 37 Atl. 1000. The court held that, as there was unavoidable delay in the settlement of the estate, the penalty should not be imposed, but required interest from the expiration of one year from the death of the decedent at the rate fixed by statute, and this notwithstanding the fact that a very large portion of the estate did not come into the executor's hands until several months after the expiration of one year from the testator's death."

The decisions establish an exception: the delay resulting from the fault of the tax officials, without fault of the representatives of the estate. 61 C.J. 1731, par. 2662, note 13. But that is not the case herein.

In our opinion, the contention that the heirs are not bound to the payment of interest is not meritorious either. It is true that the act refers to the administrators, executors, trustees, or other persons administering upon the estate

charged with said taxes, as usually their function is to liquidate the estate and turn the proceeds thereof over to the heirs free from liens or encumbrances; but the payment of the taxes always falls upon the heirs, whether such payment is made by the administrators or directly by the heirs.

In virtue of all the foregoing the appeal taken by the heirs must be dismissed; the appeal taken by the Treasurer sustained in part; and the judgment appealed from modified in the sense of directing a reassessment to fix the just value of the estate as to the date of the death of the testatrix; it being understood that in fixing the value of the undivided interest in the naked ownership of the house situated in Salvador Brau Street of this capital, the value of the usufruct shall be deducted from that of the full and entire ownership, the balance being the value of the naked ownership; that the heirs are entitled to no exemption whatsoever; that they must pay interest at the rate and from the time fixed by law; and that once the sum that the heirs must pay as principal and interest has been deducted, the balance will be refunded to them by the Treasurer.