CHAIA GLIKKA ISARAELEVNA KESSLER, ET ALS., demandantes, apelantes y apelados, *v.* MANUEL V. DOMENECH, en su carácter de Tesorero de Puerto Rico, demandado, apelado y apelante.

No. 6608.—*Sometido:* Mayo 24, 1935. *Resuelto:* Diciembre 16, 1935.

*M. Acosta Velarde* y *F. Acosta Velarde,* abogados de los apelantes y apelados; *Hon. Procurador General Benjamin J. Horton* y *R. Cordovés Arana, Subprocurador,* abogados del apelado y apelante.

El Juez Presidente Señor Del Toro, emitió la opinión del tribunal.

Chaia Glikka Isaraelevna Kessler y doce personas más residentes todos fuera de esta Isla, en su carácter de herederos testamentarios de Esther Bessie Boerman apelaron para ante la Corte de Distrito de San Juan de la valoración y el cómputo de la contribución sobre la herencia de la señora Boerman hechos por el Tesorero de Puerto Rico, pidiendo el reintegro de los $684.26 que satisficieron en mayo 19, 1932, más las costas, intereses y honorarios de abogado.

Alegaron en su demanda, en resumen, lo que sigue:

Su causante, la señora Boerman, heredera a su vez de su hijo Charles M. Boerman fallecido en esta Isla en enero 30, 1915, murió en Tomsk, Rusia, bajo testamento, el 10 de marzo

de 1920, en cuya fecha se hallaba aun en administración la herencia de su hijo.

En octubre 29, 1920, la Corte de Distrito de Ponce aprobó la división y adjudicación de los bienes de la herencia de Charles M. Boerman. Los adjudicados a la causante de los demandantes quedaron en posesión de la administradora judicial. El 24 de septiembre de 1930 dictó la corte de distrito una orden complementada por otra de marzo 16, 1932, declarando a los demandantes herederos de la señora Boerman con derecho a tomar posesión de los bienes que se le adjudicaron.

A fines de abril, 1932, se notificó al Tesorero de Puerto Rico la defunción de la señora Boerman describiéndose los bienes heredados por los demandantes, que lo fueron varios inmuebles situados en Utuado, Río Piedras, Ponce y San Juan, valorados en $25,386.77, figurando entre ellos una parte indivisa en nuda propiedad de cierta casa tasada en $11,441.20.

El Tesorero errónea, arbitraria e ilegalmente valuó los bienes en $33,965.65, basándose en la tasación del año económico 1931–32 y no en la del fallecimiento de la señora Boerman, no reconoció a los demandantes la exención de cinco mil dólares a que cada uno de ellos tiene derecho de acuerdo con la ley e incluyó el valor de la parte indivisa en nuda propiedad que se ha indicado, computando así la contribución en $322.25, cobrándoles además $361.41 por intereses a partir del 10 de marzo de 1921. De haber el Tesorero procedido correctamente nada hubieran tenido que pagar los demandantes y aun en el supuesto de que su valoración fuera correcta, nunca procedería el cobro de intereses.

El Tesorero excepcionó la demanda y sus excepciones fueron declaradas sin lugar. Contestó. Aceptó que los demandantes eran los herederos de la señora Boerman y todo lo alegado en cuanto a las herencias, pero sostuvo la legalidad de su valoración y cómputo. Como defensas especiales alegó que la corte no tenía jurisdicción para revisar la valo-

ración y el cómputo relativos a los bienes situados fuera de su distrito y que tampoco la tenía para ordenar dentro de este procedimiento la devolución de los intereses ni de ninguna otra suma satisfecha por los demandantes por contribución de herencia.

Luego se estipuló por las partes que los siguientes hechos eran ciertos:

Que los bienes heredados de acuerdo con las tasaciones oficiales para dichos años tenían un valor real y efectivo de $25,386.77 en marzo 10, 1920, y de $33,965.85 en 1930-31 y 1931-32; que se negó a los demandantes la exención de cinco mil dólares y se les concedió la de doscientos, y que los demandantes están en posesión de un condominio indiviso de 77.4877 por ciento en la nuda propiedad de la casa sita en la calle Salvador Brau de San Juan, Puerto Rico, "entendiéndose que están en la posesión legal de dicho condominio, por tener el título del mismo, ya que la posesión real y efectiva de dicha finca, la tiene la usufructuaria Mrs. Charles M. Boerman."

No hubo necesidad de prueba. Basándose en las alegaciones y en la estipulación, la corte de distrito dictó su sentencia—

" . . . disponiendo que por el Tesorero de Puerto Rico se calcule la contribución de herencia: (a) tomando por base la valoración oficial de los bienes en 1920; (b) excluyendo el valor oficial en 1920 del condominio en nuda propiedad de la finca radicada en la calle Salvador Bráu de esta ciudad; (c) no concediendo exención alguna y (d) cobrando intereses al tipo que dispone la ley sobre el importe de la contribución de herencia, desde 10 de marzo de 1921 hasta el 19 de mayo de 1932. La diferencia entre la cantidad pagada por los demandantes en 19 de mayo de 1932, o sea $684.26 y lo que realmente debieron pagar de acuerdo con el criterio expresado en esta opinión, deberá ser devuelta a los demandantes con intereses legales sobre esta última suma desde el 19 de mayo de 1932 hasta la fecha del pago, sin especial condenación de costas."

Ambas partes apelaron.

Los demandantes sostienen que la corte sentenciadora erró al no concederles la exención de cinco mil dólares y al resolver que vienen obligados al pago de intereses a partir de un año después del fallecimiento de su causante.

El demandado señala la comisión de siete errores cometidos a su juicio por la corte de distrito al resolver 1, que no existía una indebida acumulación de acciones; 2, que la demanda no era ambigua, ininteligible y dudosa; 3, al revisar la valoración y cómputo con respecto a bienes situados fuera de su distrito; 4, al declarar que el valor que debía tomarse en consideración era el que tenían los bienes a ·la fecha de la muerte de la testadora; 5, al decidir que no procedía tomar en cuenta el valor de la nuda propiedad; 6, al condenar al demandado al pago de intereses legales, y 7, al declarar con lugar la demanda y ordenar al demandado que reliquide la contribución.

■ Comenzaremos nuestro estudio por el de los dos primeros errores señalados por el demandado apelante, a saber: la indebida acumulación de acciones y la ambigüedad de la demanda.

Ambas cuestiones se suscitaron en la corte de distrito por medio de excepción previa. Se insiste en que no pueden acumularse "la acción de apelación contra la valuación y cómputo de una contribución de herencia y la de cobro de intereses" aquí ejercitadas, por no estar incluídas en ninguno de los ocho apartados del artículo 104 del Código de Enjuiciamiento Civil, ed. 1933, y en que la demanda es ambigua porque en el caso de ser acumulables las acciones, no fueron expuestas separadamente y porque existe inconsistencia entre las alegaciones y la súplica, ya que las primeras se refieren a la valoración y el cómputo y en la última se pide la devolución de lo pagado en concepto de contribución e intereses.

Estudiando la naturaleza de este procedimiento en el caso de *Sucesión Puente* v. *El Pueblo,* 19 D.P.R. 557, dijimos:

"Las prescripciones del Código Político sobre la contribución sobre herencias, son completas y especiales. En resumen, disponen .

"Nos hemos referido a la Ley de Rentas públicas de Puerto Rico de tal modo, para fijar bien la idea de que el legislador puertorriqueño al resolverse a imponer la contribución sobre herencias, adoptó un sistema completo y especial distinto en muchos particulares al adoptado para la imposición y cobranza de las otras contribuciones.

"Por ejemplo, para recurrir contra la tasación de los agentes del Pueblo, en el caso de contribuciones sobre la propiedad en general, se acude a la junta de revisión e igualamiento, que resolverá el caso en definitiva. Y para recurrir contra la valoración de los bienes de la herencia y cómputo de la contribución, se acude no a la junta de revisión e igualamiento, sino a la corte de distrito competente.

"El método fijado por la ley también es distinto para el cobro de la contribución sobre la propiedad en general y del impuesto sobre herencias. Cuando la contribución sobre la propiedad no se satisface a su debido tiempo, la misma Administración embarga y vende la propiedad y cobra lo que se le debe. Cuando la contribución sobre herencias no se satisface dentro del término fijado por la ley, el Fiscal del distrito es el llamado a instituir los procedimientos necesarios para su cobro, al recibir el oportuno aviso del Tesorero.

"En tal estado la Legislación de Puerto Rico sobre la materia, se aprobó en el año de 1911 la ley número 35 ya citada. Por su sección primera se dispone que .

"Como puede verse del resumen que hemos hecho de dicha ley número 35, por ninguna de sus disposiciones se deroga expresamente el artículo 374 del Código Político, que, como hemos visto, forma parte de las disposiciones del código relativas a la contribución sobre herencias, y que, copiado a la letra dice así:

" 'Artículo 374. Dentro de los treinta días después de haberse ultimado la valoración y cómputo de la contribución, podrá cualquier persona, o beneficiario, a quien ésta afecte, apelar contra dicha valuación y cómputo al tribunal de distrito del distrito donde los bienes radiquen, a condición de que haya pagado todas las costas, o dado fianza para el pago de ellas, y además cualquiera contribución que hubiera sido impuesta sobre la manda, legado, donación y herencia; y dicho tribunal de distrito procederá a resolver el asunto tan pronto como sea posible.'

"Si estudiamos cuidadosamente el artículo 374, veremos que establece un recurso de apelación para ante una corte de justicia contra la valuación de los bienes de la herencia y el cómputo de la contribución. Y si estudiamos también cuidadosamente la ley número 35, veremos que establece un sistema de pago de contribuciones bajo protesta cuando se inicie cualquier procedimiento o se lleve a cabo alguna diligencia para su recaudación, y un procedimiento subsiguiente para ventilar la ilegalidad del cobro ante una corte de justicia.

"El propósito de ambas leyes, es distinto, y en tal virtud, a nuestro juicio, la ley número 35 de 1911 no deroga implícitamente el artículo 374 del Código Político. Ambas leyes pueden y deben subsistir en toda su integridad. La jurisprudencia citada en el caso de El Pueblo v. Axtmayer, (pág. 399), y la teoría en que se basó en su totalidad la resolución de dicho caso, se invocan y se aplican a la decisión del presente.

"Para ejercitar el recurso que autoriza el artículo 374 del Código Político, no es necesario satisfacer con anterioridad la contribución computada. Se puede acudir, bien pagándola o ya afianzando su pago, ante la corte de distrito dentro de los treinta días después de haberse ultimado la valoración y el cómputo y obtener que la valoración y el cómputo se alteren y modifiquen, si los méritos del caso así lo requieren, de acuerdo con las pretensiones de la parte interesada.

"Para ejercitar el recurso que autoriza la ley número 35, es necesario que se inicie el cobro de la contribución por el funcionario con autoridad para ello, que se pague la contribución bajo protesta y que se acuda al tribunal bajo la base de que el cobro de la contribución pagada bajo protesta es injusto, ilegal o hecho contra las disposiciones de cualquier estatuto."

En 1925 se decretó por la Legislatura la Ley núm. 99 para modificar y ampliar la contribución sobre trasmisión de bienes por herencia y para otros fines. El artículo 7 de dicha ley es igual al 374 del Código Político interpretado en el caso de *Sucesión Puente* v. *El Pueblo,* supra, y la ley no contiene disposición otra alguna que altere dicha interpretación.

No se trata, pués, de una demanda ordinaria iniciando alguna acción, sino de una apelación contra una resolución de un funcionario .administrativo para ante las cortes de justicia.

La resolución apelada abarca varios extremos, la valoración de los bienes de la herencia, el cómputo de la contribución que deben satisfacer los herederos y los intereses exigidos de acuerdo con las expresas prescripciones de la ley. Constituye una integridad y de toda ella se apela. La devolución de lo pagado en todo o en parte, o la cancelación de la fianza prestada para poder apelar, serían la consecuencia lógica de un pronunciamiento favorable al apelante.

El escrito interponiendo la apelación, llamado en este caso "Demanda", se ajusta a nuestro juicio a la ley especial sobre la materia, y nada indebido acumula, ni es ambiguo, ininteligible y dudoso. Traslada a la jurisdicción de la corte de distrito la totalidad de lo resuelto dentro de la suya por el Tesorero para que la corte diga lo más pronto que sea posible si la resolución del Tesorero se ajusta o no a los hechos y a la ley, y dicte todos los otros pronunciamientos que fueren necesarios para hacer efectiva su jurisdicción.

No existen, pues, los dos primeros errores. Por el tercero se levanta una cuestión de jurisdicción. La ley expresamente otorga el recurso para ante el "tribunal de distrito del distrito donde los bienes radiquen."

En este caso los bienes que constituyen la herencia radican en los distritos judiciales de Arecibo, Ponce y San Juan y el recurso se estableció en la Corte de Distrito de San Juan, residencia del demandado y donde están situados la mayor parte de los bienes.

Si la interpretación de la parte demandada procede, podría darse el caso de tenerse que interponer ocho apelaciones distintas ante las ocho cortes de distrito de la Isla contra una sola resolución del Tesorero. Esa interpretación sería contraria al propósito evidente de la ley—rapidez y justicia en la imposición y el cobro de la contribución. Las cortes de distrito de Puerto Rico tienen todas la misma jurisdicción y la interpretación lógica parece ser la de que en un caso de esta naturaleza, cuando existen bienes en varios distritos cualquiera de las cortes de esos distritos a que se acuda

puede intervenir y decidir sobre la totalidad del asunto. Y ésa es la que adoptamos. No existe el error.

■ Argumentando el cuarto señalamiento sostiene el Tesorero que su contención ante la corte de distrito consistió en que dicha corte no fué puesta en condiciones de resolver si el verdadero valor de los bienes era o no el que él fijara, ya que la estipulación sólo prueba que el valor real y efectivo de los bienes, *de acuerdo con la tasación oficial de los mismos* a la fecha de la muerte de la testadora, 1920, era el de $25,386.77 y a la de la valuación, 1932, el de $33,965.85, y es sabido que la tasación no es prueba concluyente del valor.

La regla aplicable ha sido bien fijada por la jurisprudencia. Tal como ésta se resume en Corpus Juris, dice:

"Si bien para fines contributivos puede considerarse el valor dado a la propiedad en cuestión por los tasadores, tal valor no es obligatorio; no sirve de norma para fijar el valor prescrito por el estatuto para fines de contribución sobre herencia, ni debe substituírsele por la misma." 61 C. J. 1962.

Si de la estipulación no constara como consta de modo terminante que la base que adoptó el Tesorero para la valoración de los bienes de la herencia fué la tasación oficial de los mismos, diez años después de la muerte de la causante, tendría razón el Tesorero.

Pero como tal hecho consta y como no hay cuestión acerca de que la fecha que debe tomarse de base es la de la muerte de la causante (61 C. J. 1692, pár. 2554), precisa concluir que no estuvo bien hecha la valuación.

La dificultad que surge para dejar el caso definitivamente resuelto es que los apelantes se limitaron a introducir como única evidencia del valor de los bienes, su tasación oficial a la fecha del fallecimiento, evidencia que acabamos de resolver que no tiene el carácter de concluyente. Siendo ello así, se hará necesario devolver el asunto al Tesorero para que practique la valuación a la fecha del fallecimiento de la testadora de acuerdo con la ley.

■ De ese modo queda resuelto el cuarto señalamiento de error. Por el quinto se levanta la cuestión de la valuación del condominio en nuda propiedad. Conocemos. lo que decidió la corte, esto es, que no cabe tomar su valor en consideración por estar exento de contribución de acuerdo con la ley que regía a la fecha del fallecimiento de la causante, o sea la de 1916.

El Tesorero apelante aclara en su alegato que nunca sostuvo que la aplicable fuera la ley de 1925, que lo que él sostuvo y sostiene es que de acuerdo con la ley de 1916 el condominio en nuda propiedad está sujeto a contribución.

El artículo 368 del Código Político, tal como quedó enmendado por la Ley núm. 62 de abril 13, 1916 (pág. 129), que es el precepto aplicable, dispone, en lo pertinente, que:

"Todos los bienes inmuebles en Puerto Rico, y cualquiera participación en ellos, pertenecientes o no a habitantes de Puerto Rico; y todos los bienes muebles pertenecientes a habitantes de Puerto Rico que, por testamento o abintestato, o por herencia o por donación cualquiera efectuada, cuya intención fuere otorgar la posesión o el usufructo después del fallecimiento del donador, se trasmitieren a cualquiera persona, sociedad, institución o corporación en fideicomiso, o con otro carácter, estarán sujetos a una contribución según se dispone más adelante en la presente; . . . "

Estaban, pues, sujetos al pago de la contribución de herencia a la fecha de la muerte de la testadora en este caso, 1920, todos los bienes inmuebles de la herencia y toda participación en los mismos cuya *"posesión o usufructo"* se trasmita a los herederos. El texto inglés de la ley usa las palabras *"possession or enjoyment"*.

¿Se trasmite la posesión cuando sólo se hereda la nuda propiedad?

La palabra bienes es aplicable en general a cualquier cosa que pueda constituir riqueza o fortuna; propiedad es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquier otra. Otorga al propietario el derecho de gozar y disponer de la cosa sin más

limitaciones que las establecidas por las leyes y el de reivindicarla. Puede ser plena o menos plena como en el caso de la nuda propiedad en que se deduce o separa de ella el usufructo.

Usufructo es el derecho de disfrutar de una cosa cuya propiedad es ajena, percibiendo todos los productos, utilidades y ventajas que aquélla produzca, con la obligación de conservar su forma y substancia, a no ser que el título de su constitución o la ley autoricen otra cosa.

Si la ley que interpretamos en vez de usar la palabra posesión hubiera empleado la palabra propiedad, la cuestión sería más clara. Pero aun habiendo usado como usó la palabra posesión, creemos que asiste la razón al Tesorero apelante.

Lo que se entiende por posesión en general ha dado lugar a la emisión de variadas opiniones y de largos y confusos comentarios. El propio legislador no da una definición general. Trata en el título quinto del libro segundo del Código Civil "De la Posesión" y comienza diciendo en el artículo 360 que posesión natural es la tenencia de una cosa o el disfrute de un derecho por una persona y posesión civil es esa misma tenencia o disfrute, unidos a la intención de haber la cosa o derecho como suyos.

Define, pues, dividiendo, y seguidamente prescribe en los artículos 361 y 362 que la posesión se ejerce en las cosas o en los derechos por la misma persona que los tiene y los disfruta, o por otra en su nombre, y que la posesión en los bienes y en los derechos puede tenerse en uno de dos aspectos, o en el de dueño, o en el de tenedor de las cosas o derechos para conservarlos o disfrutarlos, perteneciendo el dominio a otra persona.

Poseedores son, pues, a la vez el dueño y el usufructuario debiendo imponerse a nuestro juicio a los dos la contribución, valuándose sus respectivos derechos posesorios de acuerdo con la extensión que tenga el usufructo.

Lo que el legislador tuvo en mente no fué que se pagara

una doble contribución sino que ésta fuera satisfecha de acuerdo con el justo valor del inmueble trasmitido. Ese valor es uno para El Pueblo. No así para los dueños de la nuda propiedad y el usufructo. La suma del valor de sus derechos constituye el valor total del inmueble, debiendo en tal virtud tasarse el valor de cada uno de esos derechos separadamente. Así, en un valor de cien, según sea la extensión del usufructo, el valor de la nuda propiedad puede ser un veinte, o un cincuenta, o un setenta por ciento, por ejemplo.

Siendo ello así y habiendo los propios herederos apelantes asignado en su declaración a la parte indivisa en nuda propiedad de que se trata un valor de unos once mil dólares, parece que también deberíamos dar la razón al Tesorero apelante y resolver que ese valor es el que debe tomarse en consideración para el cómputo del impuesto, pero como los apelantes alegan que ese valor se refiere al del dominio pleno y no al de la nuda propiedad, lo que parece ser lo cierto, y como el caso tiene necesariamente que volver al Tesorero, la cuestión debe quedar abierta a fin de que el Tesorero al verificar la nueva valuación haga la del condominio en nuda propiedad trasmitido a los herederos en este caso de acuerdo con los principios sobre la materia que dejamos establecidos.

El sexto error fué cometido. Los propios herederos en su alegato de réplica se allanan. La ley concede el derecho de apelar, pero no impone la obligación de abonar los intereses. La contribución no fué pagada bajo protesta y los herederos pudieron apelar sin verificar el pago limitándose a afianzarlo.

No es necesario considerar ni resolver el séptimo y último señalamiento de error. Es un resumen de los seis primeros.

Veamos ahora si asiste o no la razón a los herederos al sostener que la corte sentenciadora erró al decidir que no tienen derecho a la exención de cinco mil dólares y que vienen obligados a pagar intereses sobre la contribución a partir de un año después del fallecimiento de su causante.

La ley aplicable, el ya citado, en parte, artículo 368 del Código Político, como quedó enmendado por la Ley núm. 62 de 1916, dice en lo pertinente:

" . . . *Disponiéndose,* que no se cobrará contribución alguna sobre bienes que se trasmitan a un heredero, legatario o donatario determinado, que no sea su esposa, hijo, nieto o persona legalmente reconocida como hijo adoptivo del varón fallecido, si dichos bienes fuesen tasados en doscientos dólares o en menos; *Y disponiéndose, además,* que cuando el valor de tales bienes exceda de doscientos dólares, estos doscientos dólares se rebajarán al computar la contribución sobre los bienes referidos; y el restante después de hacer dichas deducciones será considerado como el valor de la manda, legado, donación o herencia; *Y disponiéndose, además,* que no se cobrará contribución alguna sobre bienes que se trasmitan a la esposa, hijo, nieto o persona legalmente reconocida como hijo adoptivo del varón fallecido, cuando el valor de tales bienes sea de cinco mil dólares o menos; *Y disponiéndose, además,* que cuando el valor de tales bienes que se trasmitan a la esposa, hijo, nieto o persona legalmente reconocida como hijo adoptivo exceda de cinco mil dólares, estos cinco mil dólares se rebajarán al computar la contribución sobre los bienes referidos, y el restante después de hacer dichas deducciones será considerado como el valor de la manda, legado, donación o herencia."

La corte sentenciadora sostuvo que las palabras usadas "varón fallecido" demuestran la intención del legislador de limitar la exención a aquellos casos en que el causante es varón, y los herederos apelantes alegan que si se diera a la ley esa interpretación, resultaría además de absurda, inconstitucional.

La palabra varón usada en la enmienda de 1916 tiene un significado tan claro que no es posible comprender en ella la palabra mujer como sería necesario para extender la exención a causantes de ambos sexos.

¿Pudo el legislador limitar la exención de tal modo? A nuestro juicio pudo.

Aparte de que se ha resuelto que las restricciones constitucionales en cuanto a exenciones por contribuciones sobre la propiedad no son aplicables a contribuciones sobre heren-

cias (61 C. J. 1614), no encontramos nada contrario a la moral o al orden público en la exención decretada. Pudo la legislatura considerar justa la exención en el caso del varón cuya muerte elimina al jefe de la familia que la venía sosteniendo no sólo con el producto de los bienes trasmitidos a sus herederos si que además con el de su trabajo y no considerarla necesaria en el caso de la mujer cuya aportación al sostenimiento de la familia en cuanto al ingreso de bienes materiales no es generalmente igual a la del hombre.

Como dijo el Procurador General Sr. Harlan en una opinión emitida en julio 18, 1901, sobre las secciones 94 y 95 de la Ley de Rentas, "es evidente que en esas dos secciones la legislatura hace una distinción entre la muerte del marido y la muerte de la esposa. A la muerte del primero, que es generalmente el que proporciona el sustento a la familia, la legislatura no requiere el pago del impuesto de herencia sobre los bienes que deja a su familia, aparentemente basándose en el principio de que la pérdida de su protección por parte de su familia es motivo bastante para la exención de esa familia del pago del impuesto. Por otra parte, en la sección 95 el objeto aparente de la legislatura fué imponer una contribución sobre los bienes que pasasen al marido y descendientes directos de la esposa a la muerte de ésta, basándose en la teoría de que el marido, que es el verdadero sostén de la familia, puede aún mantener a ésta, pudiendo el estado con razón participar de la herencia imponiendo una contribución sobre la misma." 1 Opiniones del Attorney General de Puerto Rico, pág. 38.

En el caso de *In re Clark's Will*, 196 N. W. 839, la Corte Suprema de Wisconsin, resolviendo una impugnación sobre la constitucionalidad de un estatuto parecido al que estamos considerando, se expresó así:

"El primer ataque hecho a esta disposición es que es anticonstitucional, por ser legislación de clase y una negación de la igual protección de las leyes. El argumento es que a los hijos que heredan del padre a través de la madre se les concede un crédito ne-

gado a los hijos que heredan de la madre a través del padre. Se dice que no hay base razonable para esta discriminación. Creemos lo contrario. La viuda es una favorita de la ley, y la disposición fué hecha sin duda alguna con el objeto de inducir al marido a hacer disposiciones liberales en favor de la viuda, y para suprimir la penalidad de una contribución de herencia adicional en caso de que ella creyera conveniente pasar la herencia a sus hijos. No es más discriminatorio que la exención de $25,000 concedida a la viuda y negada al marido. Creemos que la clasificación está basada en consideraciones similares y que está inmune de la imputación que se le hace de que tiene por resultado el negar la igual protección de las leyes.''

Y la Corte Suprema de los Estados Unidos en el caso de *Campbell* v. *California,* 200 U. S. 87, estableció la siguiente doctrina:

''La Enmienda XIV a la Constitución no priva a un estado de la facultad de reglamentar e imponer contribuciones al derecho de heredar, sino que a lo sumo restringe un ejercicio de poder que excluya la concepción de criterio y· discreción y que sea tan obviamente arbitrario e irrazonable que sobrepase la autoridad gubernamental; y los estatutos de California por tanto, no son inconstitucionales por dar preferencia a los parientes por afinidad sobre los colaterales.''

██ No hubo error. Tampoco erró la corte de distrito al resolver que los herederos estaban obligados al pago de intereses a partir de un año después del fallecimiento de su causante.

La ley aplicable—artículo 376 del Código Político—prescribe:

''Artículo 376. Todas las contribuciones impuestas por virtud del Capítulo III de este título serán ingresadas en la Tesorería de Puerto Rico por los administradores, albaceas, fideicomisarios u otras personas que administren los bienes sujetos al pago de dichas contribuciones; y todos los referidos administradores, albaceas, fideicomisarios o personas serán responsables por dichas contribuciones, con intereses, como más adelante aquí se prescribe, hasta que las mismas hayan sido satisfechas. Dichas contribuciones serán devengadas y pagaderas inmediatamente, después del fallecimiento de un poseedor de bienes, o constituirán desde luego un gravamen sobre tales bienes,

y seguirán siendo gravamen hasta que se satisfagan. Si dichas contribuciones no se pagan dentro de diez días contados desde la presentación del recibo de contribuciones, el Tesorero exigirá al correspondiente albacea, administrador, o fideicomisario fianza del doble del montante de dichas contribuciones vencidas que se adeudan, la cual garantice el pago total y saldo de dichas contribuciones, en la forma y dentro del plazo que por esta ley se establecen; y el Tesorero está autorizado para embargar la propiedad de dicho fallecido, sujeta al pago de contribución, hasta tanto que se haya prestado la antedicha fianza. Si dichas contribuciones no se pagasen dentro de un año, contado desde el expresado fallecimiento, se cargarán y se cobrarán intereses sobre ellas, al tipo de diez por ciento; y si dichas contribuciones no se pagasen dentro de los diez y ocho meses contados desde el fallecimiento, será obligación del fiscal del distrito en donde dichas contribuciones quedaron en descubierto, instruir los procedimientos necesarios para su cobro, al recibir oportuno aviso del Tesorero de no haberse pagado.''

Sostienen los herederos apelantes que en el supuesto de que no se les reconozca la exención de cinco mil dólares para cada uno que reclaman, no vienen obligados a pagar intereses porque si hubo demora no se debió a su culpa sino al hecho de que no pudieron acreditar su carácter hasta 1932 dentro de los procedimientos sobre administración judicial de la herencia y porque la ley sólo obliga al pago de ellos a los administradores, albaceas o fideicomisarios y no a los herederos.

La ley es terminante. No admite excusa. Dice que si la contribución no se paga dentro del año siguiente al del fallecimiento del causante, se cobrarán intereses. A partir de esa fecha los intereses se deben, sin que haya necesidad de penetrar en el porqué de la falta de su pago.

Resumiendo la jurisprudencia sobre la materia, dice Corpus Juris:

"En ausencia de autoridad estatutaria, la corte no tiene poder para condonar cargos por concepto del interés prescrito por la dilación en el pago de la contribución; y cuando el estatuto no especifica tales cuestiones como excusas de la demora, cobrará interés sobre tales pagos morosos aunque la dilación surja de la negligencia en la

administración de los bienes, litigios, o de que estuviera pendiente una apelación por las contribuciones, y es indiferente que parte de la herencia fuera dada *'in remainder'*; o que las disposiciones del testamento fueran modificadas por convenio.'' 61 C. J. 1731.

En el caso de *People* v. *Rice*, 91 P. 33, la Corte Suprema de Colorado, por medio de su Juez Steele, se expresó así:

''Los letrados también sostienen que los intereses impuestos equivalen a una penalidad, y que por ende el estatuto debe ser interpretado estrictamente en favor de la parte a quien se ha de imponer la misma. También que la penalidad no puede exigirse, toda vez que nunca hubo la oportunidad de pagar la contribución y así evadirla. Ora interpretemos el estatuto estricta o liberalmente, llegamos al mismo resultado. La ley, en términos claros e inequívocos, dice que la contribución 'será exigible y pagadera a la muerte del finado y que se cargarán y cobrarán intereses a razón del 6% anual a partir de la fecha en que se dejen de pagar tales contribuciones.' La legislatura sabía que bajo nuestras leyes no podía liquidarse dentro de un año contado a partir de la muerte del finado, una sucesión en que hubiera que cobrarse una contribución sobre herencia; y si las cortes han de estar en alguna forma controladas por la intención de la legislatura, según expresan las leyes del estado consideradas conjuntamente, éstas deberán decir que fué la intención legislativa no eximir a los beneficiarios de las disposiciones de esta ley porque hay litigios pendientes. No se sostiene que el contexto de esta ley sea ambiguo o dudoso, sino que los intereses cargados equivalen a una penalidad, y que bajo las circunstancias reveladas por los autos, es contrario a la equidad, injusto e ilegal que el estado cobre los intereses.

''Los estatutos de Nueva York y Pensilvania relevan a los beneficiarios de una sucesión del pago de intereses. La Sección 4, capítulo 713, página 922, de las leyes de Nueva Nueva York (Leyes de 1887), dispone: 'Todas las contribuciones impuestas por esta ley, a menos que por la presente se disponga lo contrario, serán exigibles y pagaderas a la muerte del finado, y si las mismas son pagadas dentro del término de 18 meses, no se cobrarán intereses sobre la misma, mas si no se pagaren, se cobrarán intereses a razón del 10% anual a partir del vencimiento de tal contribución.' La Sección 5 del mismo capítulo de las leyes de Nueva York, dispone: 'Que no se cargará la penalidad del 10% cuando, en casos de litigios necesarios o de otras demoras inevitables, la sucesión no puede ser liqui-

dada a la terminación del período de 18 meses contados a partir de la muerte del finado, y que en tales casos se cargará solamente el 6% sobre tal contribución, desde la fecha en que expiraron los referidos 18 meses . . .' En el caso In re Moore, 90 Hun, 169, 35 N. Y. Supp. 783, se interpreta estos estatutos, y la corte allí resolvió que toda vez que se desprendía que había habido demora inevitable en la liquidación de la sucesión, no debía imponerse penalidad alguna por la demora, sino solamente intereses al 6% desde que expiraron los 18 meses. La sucesión mencionada en el caso citado en 90 Hun, se vió envuelta en litigios durante muchos años, y sin embargo la corte exigió que se pagaran intereses como parte de la contribución según exigía el estatuto. En Pensilvania, donde los estatutos son substancialmente idénticos a los de Nueva York, surgió un caso muy similar. El estatuto fué interpretado en el caso de Miller Estate, 182 Pa. 157, 37 A. 1000. La corte resolvió que toda vez que había habido demora inevitable en la liquidación de la sucesión, no debía imponerse la penalidad, sino más bien los intereses a partir de la fecha en que expiró el período de un año desde la muerte del finado, al tipo fijado por el estatuto, y esto no obstante el hecho de que gran parte de la sucesión no vino a manos del albacea hasta varios meses después de expirado el referido año.''

La jurisprudencia establece una excepción, la dilación debida a la falta de los oficiales del gobierno, sin falta alguna por parte de los representantes de la herencia. 61 C. J. 1731, pár. 2662, nota 13. Pero ése no es aquí el caso.

En cuanto a que los herederos no estén obligados al pago de los intereses, la contención tampoco es meritoria a nuestro juicio. Es cierto que la ley se refiere a los administradores, albaceas, fideicomisarios u otras personas que administren los bienes sujetos al pago de la contribución, porque son ellos generalmente los encargados de liquidar el caudal de la herencia para trasmitirlo limpio a los herederos, pero es sobre éstos sobre los que recae siempre el pago de la contribución, bien se satisfaga el impuesto por los administradores, ya directamente por los herederos.

Por virtud de todo lo expuesto debe declararse no haber lugar al recurso establecido por los herederos y haber lugar, en parte, al entablado por el Tesorero, debiendo modificarse

la sentencia apelada en el sentido de ordenar la reliquidación dándose a los bienes el justo valor que tenían a la fecha de la muerte de la testadora, entendiéndose que al fijar el valor del condominio en nuda propiedad sobre la casa sita en la calle de Salvador Brau de esta capital se descontará el valor del usufructo del del dominio pleno siendo lo que resulte el valor de la nuda propiedad, que los herederos no tienen derecho a exención alguna y deben satisfacer los intereses al tipo y a partir del tiempo fijados por la ley, y que una vez deducido lo que los herederos deben satisfacer por principal e intereses, el remanente si lo hubiere les será devuelto por el Tesorero.